UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WANDA SENTELL,

    Plaintiff,

V.                                                   CASE NUMBER: 4:08-cv-00630-WRW

EUTAW HORTON, d/b/a CARDINAL
MANOR LUXURY APARTMENTS,

    Defendant.
_____/

## CONSENT DECREE

A Complaint has been filed by Plaintiff for violation of Fair Housing Amendments Act (42. U.S.C. § 3601, *et seq.*), hereinafter referred to as "FHA." The Complaint seeks injunctive relief compelling Defendant, Eutaw Horton, d/b/a Cardinal Manor Luxury Apartments, to alter its apartment complex to make it readily accessible to the Plaintiff and all other persons with disabilities as defined by the FHA. The parties and their respective counsel, having consented to the entry of this Decree without trial or adjudication of any issue of fact or law, agreeing that such Decree is appropriate, and without this Decree constituting an admission of fact or law by any party, it is therefore, ORDERED AND ADJUDGED, and DECREED as follows:

### I.    JURISDICTION

This Court has subject jurisdiction over matter and has personal jurisdiction over the parties to this Consent Decree. The parties agree to be bound by the terms of this Consent Decree and not to contest its validity in any subsequent proceeding arising from it.

### II.    RESPONSIBILITIES OF DEFENDANT/WORK PLAN

The Defendant agrees to make the following modifications and alterations, pursuant to the applicable safe harbor(s) referenced below, at the Apartment Complex which is the subject of this action, Cardinal Manor Luxury Apartments located at 132 Cardinal Lane, Cabot, Arkansas (hereinafter referred to as the "Apartment Complex").

    A.    **PARKING**
            i.    Defendant shall provide at least one (1) accessible parking space with an

adjacent 8-foot wide access aisle on the shortest accessible route to the entrance of each cluster of apartment entrances. Defendant shall also ensure that at least an additional two percent (2%) of the parking spaces provided are accessible parking spaces on the shortest accessible route to the entrances of the covered dwelling units and leasing office. The accessible parking spaces shall comply with the 2000 International Building Code (hereinafter referred to as "IBC") and §1106.5 of the American National Standards Institute's publication A117.1-1998 entitled Accessible and Useable Buildings and Facilities (hereinafter referred to as "ANSI") as well as the following:

 a. The accessible parking spaces shall be marked with appropriate accessible signage that shall comply with ANSI 703.7.2.1. Additionally, the signs shall be mounted so that the bottom of the sign is viewable over a parked vehicle (preferably so that the bottom edge of such signage is no less than 84 inches above the ground).

 b. The accessible parking spaces shall be at least eight (8) feet wide with a five (5) foot striped access aisle, with the exception of the van accessible parking spaces to be provided at each cluster of apartments as referenced hereinabove that shall contain an adjacent 8-foot wide, striped access aisle and shall be designated and signed "van accessible."

 c. The ground slope at the accessible parking spaces and adjacent access aisles shall be no greater than two percent (2.083%) in any direction in compliance with ANSI 502.4.

 d. Defendant shall reconfigure the accessible parking spaces if necessary to ensure that the curb ramps do not protrude down into the accessible parking spaces or the access aisles in compliance with ANSI 502.4.

 e. Defendant shall ensure that the access aisle connects to an accessible route providing access to the entry of each covered unit.

ii. <u>CURB RAMP:</u> Defendant shall provide a curb ramp fully complaint with ANSI 406 in that the slope does not exceed 8.33% and the slope of the

flared sides does not exceed 10% as part of an accessible route from each accessible parking space to the entrance(s) it serves. In constructing the ramp, Defendant shall also ensure that the curb ramp does not extend into the access aisle at the accessible parking spaces or be positioned in a manner that it can be blocked by a parked vehicle in a designated parking space.

**B.  ACCESSIBLE ROUTES**

   i.   <u>MAILBOXES</u>:

      a.   Defendant shall replace the cluster-type mailboxes with a shorter type mailbox, mounted within reach of a person seated in a wheelchair in compliance with ANSI 308. The highest operable part of the mailboxes should be no higher than 48 inches above the ground.

      b.   Defendant shall provide an accessible route compliant with ANSI 401 from all of the covered units to the mailboxes. Defendant shall ensure that the path of travel is smooth and continuous and any changes in level are no greater than ¼ inch. Defendant shall also ensure that any cross slopes do not exceed 2.083% (also known as one quarter inch of rise per foot of run or 1:48) at any point in the path of travel. If needed, Defendant may relocate the mailboxes to be on an accessible path of travel.

      c.   Defendant shall provide a curb ramp compliant with ANSI 406 where required to ensure that an accessible route is provided from all covered dwelling units to the mailboxes.

   ii.   Defendant shall replace the curb ramp at the leasing office. The newly constructed curb ramp shall be configured in such a manner that the slope does not exceed 8.33% and the slope of the flared sides does not exceed 10% in compliance with ANSI 406. Defendant may, at its option, raise the level of the accessible parking spaces and access aisles to be level with the sidewalk. In the alternative, Defendant may provide a parallel-type curb ramp in the sidewalk above the access aisle.

   iii.   Defendant shall provide a parallel curb ramp compliant with ANSI 406 in the sidewalk above the access aisle at the accessible parking space between Units

        12 and 20.

iv.    Defendant shall replace the curb ramps at Units 10, 30, 70 and 82 with an accessible curb ramp that fully complies with ANSI 406 in that the slope does not exceed 8.33% and the slope of the flared sides does not exceed 10%.

C.    **DWELLING UNITS (Exterior Issues)**

    i.    Defendant shall provide a sign compliant with ANSI 703 at each apartment unit designating the number of the unit.

    ii.    <u>Entrances:</u>

        a.    Defendant shall comply with one of the following three (3) options in order to provide an accessible entrance at each covered dwelling unit:

            1.    <u>Option 1:</u>    Defendant shall replace the threshold with a beveled threshold that is no higher than ½ inch in compliance with ANIS 404.2.5.

            2.    <u>Option 2:</u>    Defendant shall leave the existing threshold and provide a commercially available threshold ramp at the entrance door with a slope that does not exceed 8.33% (1:12).

            3.    <u>Option 3:</u>    Defendant shall replace the threshold with one that is no higher than ¾ inch and beveled with slope no greater than 50% (1:2) in compliance with 4(4) of the Fair Housing Accessibility Guidelines (hereinafter referred to as the "FHAG").

    iii.    Defendant shall raise the landing at the entry door to be no more than ½ inch below the floor level of the apartment unit. Defendant shall ensure that the new landing slope does not exceed 1.042% (1:96) in any direction in compliance with 4(6) of the FHAG. When designing and constructing the landing, Defendant shall ensure that sufficient maneuvering clearance are provided at the entry door in compliance with ANSI 404.2.4. In the event that a drop-off condition is created, Defendant shall provide edge protection at the landing in compliance with ANSI 405.9. Defendant shall also provide a fully compliant accessible ramp connecting the newly created entrance landing with the general accessible route. At its option, Defendant may

4

|      |                                                                                                                                                                                                                                                                                                                                                                                     |
|------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | provide a shared raised landing area at the entry doors of adjacent units with a shared ramp to the accessible route.                                                                                                                                                                                                                                                               |
| iv.  | Defendant shall reconfigure the sidewalks throughout the Apartment Complex to ensure that the slope of the sidewalk does not exceed 5%. The path shall also be smooth and continuous with no changes in level greater than ¼ inch. If a cross slope does exist, Defendant shall ensure that it does not exceed 2.083% (1:48) at any point.                                          |
| v.   | If at any point, the sidewalk slope exceeds 5%, that portion shall be considered a ramp and must fully comply with ANSI 405. Handrails, where required, shall be compliant with ANSI 405.8 and edge protection, where provided, shall comply with ANSI 405.9.                                                                                                                       |
| vi.  | Defendant shall provide handrails compliant with ANSI 405.8 and 505 at all ramps located on the accessible routes throughout the Apartment Complex. The handrails must be mounted between 34 and 36 inches above the finished floor measured to the top of the gripping surface.                                                                                                    |
| vii. | Defendant shall provide handrails compliant with ANSI 504.6 on both sides of the stairs at all areas where stairs are provided as part of the accessible route throughout the Apartment Complex.                                                                                                                                                                                    |
| viii.| Defendant shall provide guard rails or other permanently mounted object in compliance with ANSI 307.4 in areas where reduced vertical clearance is present, such as the area beneath the metal stairs leading to dwelling units on the upper level.                                                                                                                                 |

D. **LEASING OFFICE/MODEL UNIT AND COVERED DWELLING UNITS (Interior Issues)**

|      |                                                                                                                                                                                        |
|------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| i.   | Defendant shall lower the literature box and the "Drop Here" box to a height no greater than 48 inches above the finished floor in compliance with ANSI 308.                           |
| ii.  | Defendant shall remove the entry doormat or attach it to the ground surface so that it is stable, firm and slip resistant in compliance with ANSI 301.2.                               |
| iii. | The following modifications shall be made to each covered dwelling unit for accessibility (including the leasing office which serves as the model unit):                                |

a. Defendant shall ensure that all door hardware is equipped with lever-type hardware that does not require tight grasping, pinching or twisting of the wrist to operate in compliance with ANSI 404.2.7.

b. Defendant shall provide a commercially available threshold ramp at the entrance door that contains a slope no greater than 8.33% (1:12), or comply with one of the other options referenced in Paragraph I(C)(ii) of this Agreement.

c. Defendant shall replace passage doors (such as bedroom doors, toilet room doors, closet doors and the back door) within each of the dwelling units to ensure that they have a minimum clear opening width of at least 32 inches in compliance with ANSI 404.2.3. Offset hinges may be utilized where applicable to obtain the required 32-inch door opening width or, in the case of closet doors, the closet door could be replaced with a bi-fold door to increase usability.

d. Defendant shall lower the thermostat so that the highest operable part is no greater than 48 inches above the finished floor in compliance with ANSI 308.

e. Defendant shall lower all the light switches throughout each of the dwelling units to be no higher than 48 inches above the finished floor in compliance with ANSI 308.2. Should there exist a reach over an obstruction between 20 to 25 inches wide (such as a kitchen counter), the control must be no higher than 44 inches above the finished floor.

f. Defendant shall relocate phone jacks to a minimum height of 15 inches above the finished floor in compliance with ANSI 308.

g. Defendant shall relocate all the electrical outlets throughout each of the dwelling units to ensure that the lower outlet is no less than 15 inches above the finished floor in compliance with ANSI 308.

h. Defendant shall replace the existing refrigerator with a refrigerator that provides a minimum clear operating width of 40 inches.

i. Defendant shall provide sufficient knee clearances beneath the

1. <u>Option 1:</u> Defendant shall reduce the depth of the storage room to allow for it to be used without entering the room. This option could be offered to a new tenant.
2. <u>Option 2:</u> Defendant shall raise the floor of the new storage room to be even with the floor of the dwelling unit and provide a compliant passage door in the living room to enter the closet from the living room.

### III. <u>RESPONSIBILITY OF PLAINTIFF</u>

Plaintiff's representatives shall be provided reasonable access to the Apartment Complex to verify completion of the above referred-to work on a date mutually agreed to by the parties. In order to potentially obviate the need for an onsite inspection, Defendant shall provide digital photographs of the renovations as they are completed.

### IV. <u>COMPLETION</u>

The Defendant shall complete all alterations and modifications to the Apartment Complex referenced herein (with the exception of those to the interior of individual apartment units referenced in Section II(D) of this decree) on or before October 1, 2010. The interior of the covered dwelling units shall be renovated by Defendant to comply with this agreement as each such unit becomes vacant, or upon request of an existing tenant, such that no covered unit shall hereafter be leased to a new tenant without fully complying with Section I(D) of this agreement, until such time as all individual covered apartment units have been modified to comply with this agreement. Defendant shall also notify all current tenants that the modifications required by this agreement to the interior of a covered unit shall be made immediately by Defendant upon request of a current tenant.

### V. <u>ATTORNEY'S FEES, EXPERT WITNESS FEES AND LITIGATION EXPENSES</u>

The parties agree that Plaintiff's counsel is entitled to the award of a reasonable attorney's fee as well as cost and expenses, including expert fees, incurred in the prosecution of this matter.

Plaintiff's counsel shall provide an itemized statement of time and expense to Defendant and the parties shall thereafter negotiate in good faith. If no agreement is reached on this issue within thirty (30) days from the date of this order, the parties shall submit this issue to the Court for final resolution. Plaintiff shall submit a fee petition for the Court's consideration of this issue within

1. <u>Option 1:</u> Defendant shall reduce the depth of the storage room to allow for it to be used without entering the room. This option could be offered to a new tenant.
2. <u>Option 2:</u> Defendant shall raise the floor of the new storage room to be even with the floor of the dwelling unit and provide a compliant passage door in the living room to enter the closet from the living room.

### III. <u>RESPONSIBILITY OF PLAINTIFF</u>

Plaintiff's representatives shall be provided reasonable access to the Apartment Complex to verify completion of the above referred-to work on a date mutually agreed to by the parties. In order to potentially obviate the need for an onsite inspection, Defendant shall provide digital photographs of the renovations as they are completed.

### IV. <u>COMPLETION</u>

The Defendant shall complete all alterations and modifications to the Apartment Complex referenced herein (with the exception of those to the interior of individual apartment units referenced in Section II(D) of this decree) on or before October 1, 2010. The interior of the covered dwelling units shall be renovated by Defendant to comply with this agreement as each such unit becomes vacant, or upon request of an existing tenant, such that no covered unit shall hereafter be leased to a new tenant without fully complying with Section I(D) of this agreement, until such time as all individual covered apartment units have been modified to comply with this agreement. Defendant shall also notify all current tenants that the modifications required by this agreement to the interior of a covered unit shall be made immediately by Defendant upon request of a current tenant.

### V. <u>ATTORNEY'S FEES, EXPERT WITNESS FEES AND LITIGATION EXPENSES</u>

The parties agree that Plaintiff's counsel is entitled to the award of a reasonable attorney's fee as well as cost and expenses, including expert fees, incurred in the prosecution of this matter.

Plaintiff's counsel shall provide an itemized statement of time and expense to Defendant and the parties shall thereafter negotiate in good faith. If no agreement is reached on this issue within thirty (30) days from the date of this order, the parties shall submit this issue to the Court for final resolution. Plaintiff shall submit a fee petition for the Court's consideration of this issue within

forty-five (45) days from the date of this order if the parties fail to resolve this issue among themselves and this Court hereby retains jurisdiction to decide this issue as provided herein.

If any action or proceeding is commenced with regard to the subject matter of this Decree, then the prevailing party in such action or proceeding shall be entitled to have its reasonable attorney's fees and costs incurred in said action or proceeding promptly reimbursed by the non-prevailing party.

## VI.   CONTINUING OBLIGATION

It is the intention of the parties that, if the Apartment Complex is sold or transferred prior to the completion of all the obligations set forth herein, any purchaser or successor in interest shall be required to undertake all of the obligations as set forth herein.

## VII.   PARTIES BOUND

This Consent Decree shall be binding upon and inure to the benefit of the parties hereto and their respective officers, directors, agents, successors and assigns. The parties shall perform their obligations under this Consent Decree in good faith.

## VIII.   ADMISSIBILITY OF CONSENT DECREE

The parties have entered into this Consent Decree with the express understanding that it is the product of settlement negotiations. The Court expressly finds that the parties participated in these negotiations and have executed this Consent Decree in good faith.

## IX.   WRITTEN NOTICE

Each notice ("Notice") provided for under this Consent Decree must comply with the requirements of this Section. Each Notice shall be in writing and sent by depositing it with a nationally recognized overnight courier service which obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided. Each Notice shall be effective upon being so deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt. Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent. Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at

least ten (10) days prior notice thereof. The parties' addresses for providing Notices hereunder shall be as follows:

**Plaintiff:**

Edward I. Zwilling, Esq.
Schwartz Zweben, LLP
600 Vestavia Parkway, Suite 251
Birmingham, Alabama, 35216
Telephone: (205) 822-2701
Facsimile:  (205) 822-2702
Email: ezwilling@szalaw.com

**Defendant:**

Russell D. Carter, III, Esq.
2171 West Main Street
Office Suite 201
Post Office Box 628
Cabot, Arkansas 72023
Telephone:	(501) 605-1346
Facsimile:	(501) 605-1348
Email:	davy.carter@gmail.com
	dcarterlawfirm@gmail.com

**IN WITNESS WHEREOF,** the parties have hereunto signed their names on the day and year written below.

_____  10/13/09
Edward I. Zwilling, Esq.
Attorney for Plaintiff
Schwartz Zweben, LLP
600 Vestavia Parkway, Suite 251
Birmingham, Alabama, 35216
Telephone: (205) 822-2701
Facsimile:  (205) 822-2702
Email: ezwilling@szalaw.com

_____
Russell D. Carter, III, Esq.
Attorney for Defendant
2171 West Main Street
Office Suite 201
Post Office Box 628
Cabot, Arkansas 72023
Telephone:	(501) 605-1346
Facsimile:	(501) 605-1348
Email:	davy.carter@gmail.com
	dcarterlawfirm@gmail.com

_____  10-9-09
Wanda Sentell                              Date

_____  9-30-09
Eutaw Horton, d/b/a                  Date
Cardinal Manor Luxury Apartments

JUDGMENT IS HEREBY ORDERED in accordance with the foregoing Consent Decree.

10

DONE AND ORDERED in Chambers this 23rd day of October 2009.

_____
UNITED STATES DISTRICT JUDGE

**Conformed copies to:**
Counsel of Record